## VALIDITY OF CONTRACT FOR FREE TRANSPORTATION IN EXCHANGE FOR PROPERTY.

Common Pleas Court of Hamilton County.

CHARLES W. SHORT V. CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

Decided, April 19, 1916.

*Contracts—Land Conveyed to Railway Company in Consideration of Free Transportation—Transportation Withdrawn by the Company in View of the Provisions of the Hepburn Act—Right of the Land Owner to Maintain an Action in Ejectment Upheld.*

S in 1887 conveyed to the railway company certain parcels of land for the nominal consideration of one dollar and there was a recital in the deed as follows:

"Provided nevertheless, and this conveyance is upon this express condition, that for and during their natural lives, the said Charles W. Short, his wife and children, all and each shall have free transportation for themselves on any of the trains of said Cincinnati, Indianapolis, St. Louis & Chicago Railway, and all its branches, and that for said Short and his wife and each of them all the passenger trains of said company shall and will when so requested stop at the station at Fern Bank or at any other point on said road or any of its branches where said Short and wife or either of them may at any time be residing or sojourning. The privileges named in this condition constitute the real consideration for this deed, and the acceptance of the deed by said C., I., St. L. & C. Railway Company shall be taken as an agreement by said company to all the terms set forth in said condition; and if at any time said company shall refuse or fail to comply with the terms of said condition, the title to said property, hereby conveyed, shall immediately revert to said Charles W. Short and his heirs, who may re-enter upon and take possession thereof as fully and completely as if this conveyance had not been made, anything herein to the contrary notwithstanding." *Held:*

1. That upon the failure of the railway company to grant the transportation provided for in the condition of the deed, an action in ejectment may be maintained.

2. The defense that the railway company, being unable to comply with the performance of the condition for the giving of free transportation by reason of the fact that under the provisions of the Hepburn act of June 29, 1906 (34 Stat. at L., 587, Chap. 3591, Comp. Stat., 1913, Section 8569), Section 2, the said giving of free transportation is prohibited, the estate becomes absolute in the railway company, will not be available to defeat said action in ejectment.

3. The fact that the statutes of Indiana and the statutes of Ohio prohibit the giving of transportation in the same manner and to the same extent in regard to intrastate journeys as the Hepburn act does in regard to interstate journeys, will not justify the railway company in refusing to grant the transportation provided for in the condition of the deed, in so far as purely intrastate journeys are concerned.

4. Persons making contracts in regard to free transportation that is purely intrastate, in so far as any prohibition subsequently sought to be made by the state or states against such contracts is concerned, have the protection afforded by Article I, Section 10, of the Federal Constitution, providing that no state may pass any law impairing the obligations of contractors, and of Section 1 of the Fourteenth Amendment of the Federal Constitution, providing that no state shall make or enforce any law which shall deprive any person of life, liberty or property without due process of law.

5. There is nothing in the language of the aforesaid condition that compels the court to construe its provisions as entire, and therefore the court will apply the well known principle that where one for a valid consideration agrees to do one or more things, one of which may be illegal, he may, nevertheless, be compelled to do the other or others.

6. If it shall appear that under the court's order of ejectment in such a case the rights of the public are being interfered with, the court will stay proceedings until steps have been taken to preserve the rights of the public.

*Worthington, Strong & Stettinius,* for plaintiff.
*Harmon, Colston, Goldsmith & Hoadly,* contra.

GEOGHEGAN, J.

This is an action in ejectment and by agreement of counsel a jury was waived and the matter submitted for the court's final determination.

On June 15, 1887, Charles W. Short and Mary D. Short, his wife, conveyed a strip of land to the Cincinnati, Indianapolis, St. Louis & Chicago Railway Company, 13½ feet wide at its narrowest point and 30 feet wide at its broadest point, and extending for a distance of a mile and a half, from the east line of the village of Fern Bank to the east line of the property of the railway company, and in addition certain lots of land in Grayson Square, in the village of North Bend, containing 2.47 acres. The deed was made for the nominal consideration of $1, and there was a recital in the deed as follows:

"Provided nevertheless, and this conveyance is upon this express condition, that for and during their natural lives, the said Charles W. Short, his wife and children, all and each shall have free transportation for themselves on any of the trains of said Cincinnati, Indianapolis, St. Louis & Chicago Railway, and all its branches, and that for said Short and his wife and each of them all the passenger trains of said company shall and will when so requested stop at the station at Fern Bank or at any other point on said road or any of its branches where said Short and wife or either of them may at any time be residing or sojourning. The privileges named in this condition constitute the real consideration for this deed, and the acceptance of the deed by said C., I., St. L. & C. Railway Company shall be taken as an agreement by said company to all the terms set forth in said condition; and if at any time said company shall refuse or fail to comply with the terms of said condition, the title to said property, hereby conveyed, shall immediately revert to said Charles W. Short and his heirs, who may re-enter upon and take possession thereof as fully and completely as if this conveyance had not been made, anything herein to the contrary notwithstanding."

At the time this deed was executed Mr. Short had a wife and three sons living. Since that time his wife has died and Mr. Short and his three sons, William A. Dudley Short, John Cleves Short and Charles Wilkins Short, are the beneficiaries of the provisions of the recital in the deed above referred to.

At the time of the grant, the Cincinnati, Indianapolis, St. Louis & Chicago Railway Company was a corporation under the

laws of the state of Indiana, operating a line of railroad from the city of Cincinnati, in the state of Ohio, to the city of Lafayette, in the state of Indiana. Subsequent to the execution of the deed, the said company, together with certain other companies, were, by an agreement of consolidation, merged into one company, known as the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, which is the defendant herein, and by the terms of said agreement of consolidation the said consolidated company agreed to assume and be bound by all the liabilities and obligations of each of the several companies parties to the agreement of consolidation.

Since October 1, 1911, the defendant company has refused to give transportation to the plaintiff or any of his sons on any of the trains operated by the said railway company between any two points reached by said trains. Subsequent to said refusal, and prior to the commencement of this action, the said Charles W. Short made entry upon the lands conveyed by him by the deed hereinbefore mentioned, claiming that the title to the lands had reverted to him by reason of the breach of the condition in said deed, and he now brings this action for the purpose of evicting the said defendant company from its occupation of these said lands.

The defendant claims that he should not succeed in his action because of the fact that the commerce act of Congress, of June 29, 1906, which became effective August 28, 1906, 34 Stats. 838, Pt. 1, Res. 47, prevents it from carrying out the provisions of the condition named in the deed.

Among the provisions contained in that act is the following:

"Nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs, than the rates, fares and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

The defendant company claims that inasmuch as it is prevented, by the operation of this act, commonly known as the Hepburn act, from receiving a different compensation for transportation of passengers from that contained in the published tariffs, which are provided for in the act, it is justified in refusing to give the transportation provided for as the real consideration for the deed, and further that, its compliance with the condition having been rendered impossible by the act of Congress, the estate conveyed by the deed has become absolute in the defendant company. Counsel cites as authority for this contention the principle that wherever an estate is made to depend upon a condition subsequent and that condition subsequent becomes impossible of performance by act of law, the estate in the grantee becomes absolute. 4 Kent's Comm., 129, 130; Coke upon Littleton, 206a, 208b; Bacon's Abridgment, Tit. Condition (Q. 2); 2 Blackstone, 156; *Brewster* v. *Kidgill,* 1 Lord Raymond, 317; *Doe ex Dem. Marquis of Anglesea* v. *Churchwardens of Rugeley,* 6 Q. B., 114; *Scovill* v. *McMahon,* 62 Conn., 378, and other cases.

However, this case must be determined according to the construction placed upon the Hepburn act by the Supreme Court of the United States in two cases wherein contracts made by common carriers for the furnishing of free transportation were before court for consideration.

In the case of *Louisville & Nashville Railroad Company* v. *Mottley,* 219 U. S., 467, the facts were as follows:

Mottley and his wife received serious personal injuries by reason of a collision of railroad trains belonging to the Louisville & Nashville Railroad Company, and in consideration of the release of said company from all damages or claims for damages for injuries received by them in said collision the said railroad company agreed to issue free passes on said railroad and branches to the said Mottleys for the remainder of the year during which the release was obtained and to renew said passes annually during the lives of the said Mottley and wife, or either of them. This agreement was strictly adhered to for years, but the railroad company finally refused to further perform it on the ground

that the act of Congress, known as the Hepburn act, made its performance illegal. After certain proceedings in the United States court, which were ultimately dismissed for want of jurisdiction, an action was brought in the Circuit Court of Warren County, Kentucky, the relief sought being that the defendant company be required specifically to execute the above agreement by issuing passes to the plaintiff as provided by its terms. That action ultimately reached the Supreme Court of the United States, where the relief prayed for was denied, the court holding that the power of Congress to act in regard to matters involving interstate commerce is not to be hampered by contracts made in regard to such matters by individuals, but that contracts which are made concerning matters in the nature of interstate commerce are made subject to the possibility that even if valid when made, Congress may, by exercising its power, render them invalid; in other words, holding that all persons who make contracts concerning matters that subsequently may be regulated by Congress, under the power delegated to it to regulate interstate commerce, must do so having this power of Congress in view at all times.

However, it will be observed that the Mottley suit was brought to specifically enforce the agreement and that was the relief that was denied by the Supreme Court. But in the court's opinion, at page 486, it is said:

"Whether, without enforcing the contract in suit, the defendants in error may, by some form of proceeding against the railroad company, recover or restore the rights they had when the railroad collision occurred is a question not before us, and we express no opinion on it.'

This case was decided February 20, 1911.

On December 17, 1915, the case of *New York Central & Hudson River Railroad Company* v. *Charles P. Gray* came before the Supreme Court of the United States for consideration, and on January 10, 1916, the court rendered its decision upon the question presented in that case. The facts in that case were briefly as follows:

In November, 1900, Gray made an agreement with the railroad company to make for the company a large map of the Vanderbilt lines for the World's Fair, which was to take place at Buffalo in the following year. The price agreed to be paid to him was $750, of which $150 was to be paid in cash and the balance in transportation between New York City and Girard, Pennsylvania. The map was made, delivered and accepted, and the cash payment of $150 was made. At different times between the making of the contract and the month of September, 1906, Gray received from the railroad company transportation to the value of $55.77. In September, 1906, he was refused transportation upon the ground that, because of the provisions of the Hepburn act, the company could furnish no further transportation on account of his services. He brought suit to recover the unpaid balance of the agreed price of the map, and the railroad company set up a defense that by the terms of the Hepburn act it was unlawful to furnish transportation for any part of an interstate journey in payment for services or for any other consideration except a regular fare paid in money. The trial court held that this constituted no defense and directed a verdict in favor of the defendant in error for the amount sued upon. The case ultimately reached the Supreme Court of the United States for review. The Supreme Court held that while the railroad company acted strictly in accordance with the law when it refused any longer to furnish transportation to Gray in performance of the contract, it did not necessarily follow that it could refuse to make just compensation in money for the unpaid balance of the purchase price of the map, and, speaking through Mr. Justice Pitney, the court used the following language in its opinion:

"But there is nothing in the act to prevent or relieve a carrier from paying in money for something of value which it had long before received under a contract valid when made, even though the contract provided for payment in transportation, which the passage of the act rendered thereafter illegal. In the Mottley case, while the right to further specific performance of the contract for free passage was denied, the court said:" (and then is quoted the exact language hereinbefore quoted from the Mottley case).

This opinion can be found in the advance sheets of the Supreme Court Reporter under date of February 15, 1916; 36 Supreme Court Rep., 176.

It would seem, therefore, that in view of the construction put upon the application of the Hepburn act to contracts which provide for the giving of free transportation on railroad trains for services rendered or property conveyed, it would be unjust to consider the principle of law with reference to conditions subsequent as determinative of the rights of the parties to this cause. It will be observed that the real consideration for this deed was the giving of the free transportation provided for therein. The railroad company has had the use of the property for a great number of years, and it may be assumed that the value of the use of the property would offset the value of the transportation that may have been furnished during those years, and it would seem in accord with the principles of natural justice that inasmuch as the railroad company can no longer comply with its contract by reason of the operation of the Hepburn act, the parties should be placed in the same position that they were prior to the making of this deed. Such a rule would seem to be in accord with the principles laid down in the two cases in the Supreme Court above cited.

Another consideration would impel the court to grant the relief prayed for herein, irrespective of that just discussed, and that is, the question as to whether or not the railroad company was justified in refusing transportation on the lines of its road which was entirely intra-state. It will be observed that the line of the railway company extended, at the time of the making of the deed, from Cincinnati, in the state of Ohio, to Lafayette, in the state of Indiana. The condition in the deed provided that not only should the said Short and his wife and children have free transportation on any of the trains of said railway company and its branches, but that said trains of the company should stop when requested at Fern Bank or any point on said road, or any of its branches, where said Short and wife, or either of them, may at any time be residing or sojourning. This, practically construed, means that the said Short and the other beneficiaries

of the condition could have transportation from any one point on the line of the road to any other point, irrespective of whether these points were the terminal points of the road or not; so that, therefore, the said Short might have transportation between two points entirely in the state of Indiana and between two points entirely in the state of Ohio. While it is true that he could not have this transportation as a part of an interstate journey without running afoul of the prohibition of the Hepburn act, nevertheless, there is no reason to so construe the deed as to make the provisions of the condition refer entirely to interstate journeys. The deed may be construed as contemplating intra-state journeys as well as interstate journeys, and, therefore, even if that part of the consideration for the transfer which might compel the giving of interstate passes would be unenforcible under the Hepburn act, nevertheless that part of it that might be construed as compelling the giving of intrastate passes would still remain enforcible.

There is nothing in the language of this deed that compels the court to construe its provisions as entire, and therefore the well known principle that where one, for a valid consideration, agrees to do two or more things, one of which is illegal, he may nevertheless be compelled to do the other or others, is applicable to the state of facts we have here. *Lange* v. *Werk*, 2 Ohio St., 520; *Widoe* v. *Webb*, 20 Ohio St., 431, at 435.

It can not be said in answer to this that both the statutes of Indiana and the statutes of Ohio prohibit the giving of transportation, in cases such as this, in the same manner and to the same extent in regard to intrastate journeys as the Hepburn act does in regard to interstate journeys. Neither the Indiana act or the Ohio act were in force at the time the contract sued on herein was made, but were enacted and passed a long time subsequent to the date of this contract and, indeed, were passed after the Hepburn amendment of June 29, 1906.

While one must concede, in view of the decision of the Supreme Court in the Mottley case, that persons making contracts of this kind must do so having in contemplation the fact that the power of Congress to regulate interstate commerce may make

their agreement, in so far as it provides for the giving of free transportation, null and void, nevertheless, persons making contracts with regard to free transportation that is purely intrastate, in so far as any prohibition subsequently sought to be made by the state or states against such contracts is concerned, have the protection afforded by Article I, Section 10, of the Federal Constitution, providing that no state may pass any law impairing the obligations of contracts, and of Section 1 of the Fourteenth Amendment of the Federal Constitution, providing that no state shall make or enforce any law which shall deprive any person of life, liberty or property without due process of law.

Therefore, in view of the considerations stated above, it is the court's opinion that an order should be made granting the relief prayed for in the petition herein.

The court does not pass upon any question concerning the rights of the defendant, if any, under the occupying claimant act or its power of eminent domain.

NOTE.—After the above opinion was written, but before it was announced, counsel for the defendant called the court's attention to the case of *The Dayton, Xenia & Belpre Railway Company* v. *Lewton,* 20 Ohio St., 401, with the request that the court consider the decision in that case before passing upon the question involved in the case at bar.

However, nothing in that case can in any way affect the conclusion herein. Lewton had agreed to give a right-of-way to the railway company over certain of his property for an agreed consideration to be paid in installments. The company entered upon and constructed its road over the property of Lewton in pursuance of said agreement, but neglected to pay the second and third installments as had been provided for in the contract, and also neglected to demand and receive a deed from Lewton. The company subsequently was merged with another company and Lewton brought suit against it to enforce a vendor's lien upon the property that had been conveyed. The court decreed a sale of the specific property, but on review in the Supreme Court it was held that inasmuch as the public had acquired a

right to have the highway kept open and as the sale of a. particular portion of said railway would exclude the public from its right to have it operated as a continuous line, the order of sale should be directed as against the whole line of the railway company and not against a specified portion. In other words, the Supreme Court directed that the whole railway be sold as such.

However, that was an action in equity, while this is an action at law, and as it appears from the reasons above stated that the issues herein are with the plaintiff, the court can not see that the questions that arose in the case last cited can control or have any effect on the questions to be decided herein. If it shall subsequently appear that the rights of the public are being interfered with by this court's order, the court will stay proceedings herein until steps shall have been taken to preserve the rights of the public.